# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

TRAEE DARAN LEE,

    Plaintiff,

       v.

QUEEN ANNE'S COUNTY OFFICE
OF THE SHERIFF, et al.

    Defendants.

Civil Action No. RDB-13-672

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

This case arises out of a traffic stop and subsequent prosecution of Plaintiff Traee Daran Lee ("Lee") in Queen Anne's County, Maryland. Although Lee was initially convicted of and imprisoned for a variety of state charges, the Queen Anne's County State's Attorney later entered an order of *nolle prosequi*[1] and Lee was released from custody. Thereafter, Lee filed this action, asserting a variety of federal and state claims for money damages against the State of Maryland and Defendant Deputy Vernell Johnson ("Deputy Johnson"), the officer involved in the traffic stop and who testified at Lee's trial. After obtaining leave to file an amended complaint, Lee named the Queen Anne's County Office of the Sheriff and Queen Anne's County Sheriff Gary Hofmann as additional defendants. The Defendants have filed three separate Motions to Dismiss (ECF Nos. 31, 33, and 37). The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2011). For

---

[1] An order of *nolle prosequi* signals the State's decision to discontinue and abandon a prosecution. *See Ward v. State*, 290 Md. 76, 81-83 (Md. 1981).

the reasons that follow, Defendant State of Maryland's Motion to Dismiss (ECF No. 33) is GRANTED. Defendant Deputy Vernell Johnson's Motion to Dismiss Amended Complaint (ECF No. 31) is GRANTED IN PART and DENIED IN PART. Finally, the Motion of Defendants Queen Anne's County Office of the Sheriff and Sheriff Gary Hofmann to dismiss the amended complaint (ECF No. 37) is GRANTED IN PART and DENIED IN PART. In addition, the open motions to dismiss the original complaint (ECF No. 13, 15, and 23) are DENIED AS MOOT.

## BACKGROUND

This Court accepts as true the facts alleged in the plaintiff's complaint. *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011). This case originates from a traffic stop by Defendant Deputy Vernell Johnson ("Deputy Johnson") on or about March 4, 2010. Pl.'s Am. Compl. ¶ 15. In his police report, Deputy Johnson stated that Plaintiff Traee Daran Lee ("Lee")[2] was driving the car and that the car had driven through a stop sign.[3] *Id.* ¶¶ 16, 29. However, Lee's Amended Complaint asserts that he was not driving the car and that the

---

[2] In a number of places in his briefs, Lee refers to himself as a "young African-American man." *See, e.g.,* Pl.'s Johnson Opp. 20, ECF No. 35. Nowhere, however, does Lee's Amended Complaint make such an allegation.

[3] The Court recognizes that this specific summary with respect to the police report is not expressly alleged in the Amended Complaint. However, because of this Court's mandate to read the Amended Complaint in the light most favorable to Lee and to draw all reasonable inferences in his favor, this Court believes that this reading is both appropriate and necessary. After describing the traffic stop, Lee alleges that "[e]ven though Plaintiff was not driving this vehicle, Deputy Johnson testified under oath that Plaintiff was driving the vehicle and that the vehicle drove through a stop-sign." Pl.'s Am. Compl. ¶ 16. In the very next paragraph, Lee alleges that a warrant was improperly issued. *Id.* ¶ 17. Thus, the order of the Amended Complaint suggests that this "testimony" pertained to the issuance of the warrant. Moreover, inferring that Deputy Johnson made some initial, pre-trial statement leading to the issuance of the warrant is consistent with both (1) Lee's subsequent allegation that the State's Attorney stated that "the dashboard camera revealed that the recorded events were 'contrary to what the officer testified to in his police report,'" *id.* ¶ 29, and (2) Lee's later, separate allegation that Deputy Johnson provided false testimony at the state trial. *See id.* ¶ 23.

car did not drive through a stop sign. *Id.* ¶ 16. Subsequently, Lee alleges that an improper warrant was issued for his arrest. *Id.* ¶ 17. When he learned of the warrant, Lee allegedly surrendered to authorities and was briefly incarcerated before being released on bond that same day. *Id.* ¶¶ 18-19.

Between his arrest and his trial, Lee alleges that Deputy Johnson "continually harassed" Lee and Lee's family. *Id.* ¶ 20. According to the Amended Complaint, Deputy Johnson would follow Lee whenever Deputy Johnson saw him on the road. *Id.* ¶ 21. In addition, Deputy Johnson allegedly followed Lee into a convenience store on one specific occasion and screamed that he knew Lee was guilty and that he would "do whatever it takes to prove it." *Id.* ¶ 22.

At the trial on or about June 17, 2010, Lee alleges that Deputy Johnson provided false testimony. *Id.* ¶ 23. Based on this testimony, Lee was convicted for fraud, failure to stop, and driving with a revoked license and sentenced to two (2) months imprisonment in the Queen Anne's County jail. *Id.* ¶ 24.

After his conviction, Lee's mother requested an investigation of the case. *Id.* ¶ 25. Allegedly, the investigation revealed dashboard camera video evidence suggesting that Deputy Johnson had "perjured himself." *Id.* Lee was released from custody on July 15, 2010 (after twenty-eight (28) days of imprisonment), and the Queen Anne's County State's Attorney entered an order of *nolle prosequi* for each of the charges against Lee on July 28, 2010. *Id.* ¶¶ 27-28. At some point, the State's Attorney purportedly stated that "the dashboard camera revealed that the recorded events were 'contrary to what the officer testified to in his police report'"; "'that there was . . . no probable cause for the traffic stop'";

and that "'the State would not have proceeded with the matter'" in light of the new evidence. *Id.* ¶ 29.  Lee asserts that Deputy Johnson's actions were undertaken with malice and that he has suffered mental anguish, emotional pain and suffering, and financial loss as a result.  *Id.* ¶¶ 30, 34.  Specifically, Lee asserts that he has received treatment (including both prescription therapy and counseling) from a psychiatrist for anxiety and depression, and that he has trouble sleeping and avoids socializing due to his experiences with Deputy Johnson. *Id.* ¶ 47.

On March 4, 2013, Lee filed his original Complaint (ECF No. 1) against Deputy Vernell Johnson, Queen Anne's County, Maryland ("the County"), and the State of Maryland ("the State").  After the County and the State filed motions to dismiss (ECF Nos. 13 and 15),[4] Lee sought leave to file an amended complaint.  *See* Pl.'s Mot. Leave File Am. Compl., ECF No. 19.  This Court granted Lee leave to amend on June 27, 2013, and Lee's Amended Complaint (ECF No. 29) against Defendants Deputy Johnson, Sheriff Gary Hoffman ("Sheriff Hofmann"), the Queen Anne's County Office of the Sheriff ("the Sheriff's Office"), and the State (collectively, "the Defendants") was automatically filed.[5] Lee's Amended Complaint asserts twenty-three (23) claims against the Defendants, including claims for violation of 42 U.S.C. § 1983 (Counts I, II, III, and XXII), conspiracy (Counts IV, V, and XIII), Maryland Declaration of Rights claims (Counts VI and VII), false arrest

---

[4] In addition to these Motions, Deputy Vernell Johnson's filed a Motion to Dismiss (ECF No. 23) on June 12, 2013—a little over a month after Lee filed his Motion for Leave to Amend (ECF No. 19), but before this Court granted Lee's Motion.  Because Lee has now filed his Amended Complaint, this Court denies all three original motions to dismiss (ECF Nos. 13, 15, and 23) as moot.

[5] As permitted by Local Rule 103.6(a) (D. Md. 2011), Lee's proposed Amended Complaint (ECF No. 19-2), attached to his Motion for Leave to File an Amended Complaint, was automatically filed upon this Court's order granting Lee leave to amend.

(Count VIII), false imprisonment (Count IX), malicious prosecution (Count X), abuse of process (Count XI), invasion of privacy (Count XII), intentional infliction of emotional distress (Count XIV), negligent hiring (Count XV), negligent training and supervision (Count XVI), negligent retention (Count XVII), negligent entrustment (Count XXI), gross negligence (Count XIX), general negligence (Count XX), unlawful custom, pattern or practice of improper conduct (Count XVIII), and reckless endangerment (Count XXIII).

On July 10, 2013, Deputy Johnson filed his Motion to Dismiss Amended Complaint (ECF No. 31). On July 11, 2013, the State filed a separate Motion to Dismiss Amended Complaint (ECF No. 33). Finally, Sheriff Hofmann and the Sheriff's Office filed their Motion to Dismiss (ECF No. 37) on July 30, 2013. All three motions to dismiss were fully briefed.[6]

## STANDARD OF REVIEW

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

---

[6] The State, however, chose not to file a Reply on its Motion to Dismiss, and the time to do so has now long-since passed.

The Supreme Court's recent opinions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "require that complaints in civil actions be alleged with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). The Supreme Court's decision in *Twombly* articulated "[t]wo working principles" that courts must employ when ruling on Rule 12(b)(6) motions to dismiss. *Iqbal*, 556 U.S. at 678. First, while a court must accept as true all the factual allegations contained in the complaint, legal conclusions drawn from those facts are not afforded such deference. *Id.* (stating that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim); *see also Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) ("Although we are constrained to take the facts in the light most favorable to the plaintiff, we need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." (internal quotation marks omitted)).

Second, a complaint must be dismissed if it does not allege "a plausible claim for relief." *Id.* at 679. Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Although the plausibility requirement does not impose a "probability requirement," *id.* at 556, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also Robertson v. Sea Pines Real Estate Cos.*, 679 F.3d 278, 291 (4th Cir. 2012) ("A complaint need not make a case against a defendant or *forecast evidence* sufficient to *prove* an element of the claim. It need only

*allege facts* sufficient to *state* elements of the claim." (emphasis in original) (internal quotation marks and citation omitted)). In making this assessment, a court must "draw on its judicial experience and common sense" to determine whether the pleader has stated a plausible claim for relief. *Iqbal*, 556 U.S. at 679. "At bottom, a plaintiff must nudge [its] claims across the line from conceivable to plausible to resist dismissal." *Wag More Dogs, LLC*, 680 F.3d at 365 (internal quotation marks omitted).

<u>ANALYSIS</u>

Plaintiff Lee's Amended Complaint asserts a variety of federal and state causes of action against the Defendants. In their various motions to dismiss, Defendants raise a variety of issues, including various immunity doctrines, failure to state a plausible claim under *Iqbal* and *Twombly*, and procedural defects. In the interests of efficiency, this Court will address the issues raised by the parties in their papers in the following manner. First, this Court will address the argument raised by Sheriff Hofmann and the Sheriff's Office regarding the failure to serve a red-line version of the Amended Complaint. Second, this Court will address the issue of sovereign immunity as to all Defendants. Third, this Court will examine whether Deputy Johnson may claim immunity for his trial testimony. Fourth, this Court will address Lee's federal claims.[7] Finally, this Court will address Lee's state law claims,[8] considering the state immunity questions as a preliminary matter.

**I.      Service of a Red-Line Copy of the Amended Complaint Pursuant to Local Rule 103.6.**

---

[7] Lee's federal claims include several 1983 claims (including Counts I, II, III, and XXII) and the federal conspiracy claims (Counts IV and V).

[8] Lee's state law claims include Counts VI-XXI and Count XXIII.

In their Memorandum in Support of the Motion to Dismiss (ECF No. 37-2), Defendants Sheriff Hofmann and the Sheriff's Office argue that Lee's Amended Complaint should be dismissed because Lee failed to serve them with a red-line copy of the Amended Complaint pursuant to Local Rule 103.6 (D. Md. 2011). Indeed, the rules of this Court state that:

> Unless otherwise ordered by the Court, the party filing an amended pleading shall file and serve (1) a clean copy of the amended pleading and (2) a copy of the amended pleading in which stricken material has been lined through or enclosed in brackets and new material has been underlined or set forth in bold-faced type.

Local Rule 103.6(c) (D. Md. 2011). Sheriff Hofmann and the Sheriff's Office argue that they were prejudiced by this failure due to the difficulty in identifying the new allegations in the lengthy Amended Complaint.[9] In response, Lee does not dispute that he failed to serve a red-line copy on the Sheriff's Office or Sheriff Hofmann. Instead, Lee argues that he appropriately filed a red-line copy with his Motion for Leave to Amend and that there was no real prejudice to either Sheriff Hofmann or the Sheriff's Office because they had access to the red-line copy through this Court's electronic filing system.

---

[9] Specifically, Sheriff Hofmann and the Sheriff's Office argue that:

> Plaintiff has materially prejudiced the Queen Anne's County Office of the Sheriff and Sheriff Gary Hofmann, since each are now forced to ascertain what is new material by trying to directly compare the language of the original Complaint with the newly Amended Complaint. The magnitude of this burdensome task cannot be overstated due to the fact that Plaintiff has filed an Amended Complaint that is no less than forty pages long and contains twenty three counts.

Sheriffs' Mem. Supp. Mot. Dismiss 6, ECF No. 37-2.

This Court sees no reason to dismiss Sheriff Hofmann and the Sheriff's Office from this suit based solely on Lee's failure to serve a red-line copy of the Complaint. In fact, this Court has not required strict compliance with the red-line copy requirement of Local Rule 103.6(c). *See Chambers v. Choice Hotels Intern., Inc.*, Civ. A. No. DKC-11-0404, 2011 WL 2457645, at *2 (D. Md. June 15, 2011) (Chasanow, C.J.) (excusing plaintiff's failure to attach red-lined copy to motion for leave to file amended complaint in order to add a defendant where red-lined copy was attached to plaintiff's reply brief); *Awah v. Board of Educ. of Baltimore Co.*, Civ. A. No. WMN-09-cv-1044, 2010 WL 1929908, at *2 (D. Md. May 11, 2010) (Nickerson, J.) (refusing to deny *pro se* plaintiff's motion to amend on the sole ground that plaintiff had not filed a red-line copy and where there was no prejudice to the defendant). Although involving an issue of service, this matter does not trigger any due process or jurisdictional questions; indeed, such matters are never mentioned in the Defendants' motion.

Moreover, this Court finds the Defendants' claims of prejudice unpersuasive. Sheriff Hofmann and the Sheriff's Office were not originally parties to this suit and they were only named as defendants by Lee's Amended Complaint. As such, the Amended Complaint constitutes the first time that a claim of any sort was asserted against them. In light of this fact, the Defendant's Motion does not explain why a red-line copy was necessary. The mere length of the Amended Complaint[10] could not have prejudiced the Defendants, as one would expect them to read the pleading in its entirety upon initial receipt. Moreover, the red-line copy was, in fact, available to Sheriff Hofmann and the Sheriff's Office through this

---

[10] The Court notes that Lee's original Complaint (ECF No. 1) was of nearly equal length.

Court's electronic filing system. Accordingly, this Court refuses to grant the Defendants' Motion to Dismiss based upon Lee's failure to serve a red-line copy of the Amended Complaint alone. However, this Court expects Lee to fully comply with Local Rule 103.6(c) in the event of any further amended pleadings.

## II. Eleventh Amendment Immunity

The Eleventh Amendment of the United States Constitution acts as a bar to certain actions against a State and the State's officials. Specifically, the Eleventh Amendment states that:

> The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state.

U.S. CONST. Amend. XI. States may nevertheless consent to suit in federal court, and Congress may also abrogate the states' sovereign immunity pursuant to its power under the Fourteenth Amendment. *See Va. Office for Prot. & Advocacy v. Stewart*, 131 S. Ct. 1632, 1637-38 (2011). However, the types of claims raised here—claims under 42 U.S.C. § 1983, § 1985, and § 1986—are not subject to either of these exceptions and, as such, are barred by the Eleventh Amendment. *See* Md. Code, State Gov't § 12-103(2) (noting that the Maryland Tort Claims Act "does not . . . waive any right or defense of the State or its units, officials, or employees in an action in a court of the United States or any other state, including any defense that is available under the 11th Amendment to the United States Constitution"); *Thompson v. State of Maryland Dep't of Transp.*, Civ. A. No. AW-09-297, 2010 WL 2473269, at *3 (D. Md. June 14, 2010) (holding that Maryland has not consented to § 1983 claims in federal court); *Quern v. Jordan*, 440 U.S. 332, 338-45 (1979) (holding that § 1983 was not

intended to abrogate states' Eleventh Amendment sovereign immunity); *Clark v. Md. Dep't of Pub. Safety & Corr. Servs.*, 247 F. Supp. 2d 773, 776 (D. Md. 2003) (same with respect to § 1985); *Coffin v. South Carolina Dep't of Social Services*, 562 F. Supp. 579, 585 (D.S.C. 1983) (same with respect to § 1983, § 1985, and § 1986). Accordingly, this Court cannot entertain Lee's federal claims against the State of Maryland, and those claims are dismissed.

The other Defendants in the case—i.e., Deputy Johnson, Sheriff Hofmann, and the Sheriff's Office—also argue that the Eleventh Amendment bars this Court from entertaining Lee's federal claims against them. Indeed, Eleventh Amendment sovereign immunity "extends to arms of the State, including state agencies and state officers acting in their official capacity." *Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. 1996) (internal quotation marks and citations omitted). In making the determination whether a particular individual or entity is an arm of the State, the main consideration is "whether the state treasury will be liable for the judgment." *Id.*

The particular question at issue in this case—whether a county Sheriff and the Sheriff's deputies are arms of the State for purposes of the Eleventh Amendment—has been previously considered by this Court and the Maryland Court of Special Appeals. Those cases hold that county sheriffs offices are state agencies and that county sheriffs and their deputies are state officials when acting in their law enforcement capacities. *See, e.g., McDonnell v. Hewitt-Angleberger*, Civ. A. No. WMN-11-3284, 2012 WL 1378636, at *4 n.3 (D. Md. April 19, 2012); *Lindsey v. Jenkins*, Civ. A. No. RDB-10-1030, 2011 WL 453475 (D. Md. Feb. 3, 2011); *Rossignol v. Voorhaar*, 321 F. Supp. 2d 642, 651 (D. Md. 2004); *State v. Card*, 104 Md. App. 439 (Md. Ct. Spec. App. 1995). Thus, Lee's suit against the Sheriff's Office—an

arm of the State of Maryland—is barred by the Eleventh Amendment. Moreover, Lee's claims against Deputy Johnson and Sheriff Hofmann in their official capacities are also barred because Lee's claims relate to the Defendants' official duties.[11] Lee's claims against Deputy Johnson arise from the vehicle stop and the allegedly perjured testimony offered at trial. Similarly, Lee's claims against Sheriff Hofmann relate to Sheriff Hoffman's oversight and administration of the Sheriff's Office. Thus, the Eleventh Amendment bars Lee's suit against Deputy Johnson and Sheriff Hofmann in their *official capacities*. Accordingly, Lee's federal claims against the State, the Sheriff's Office, and the claims asserted against the individual Defendants in their *official capacities* must all be dismissed.

Lee's state-law claims against these entities also must be dismissed. The State of Maryland has not waived its sovereign immunity to suits brought against it in federal court. *See Lindsey*, 2011 WL 454475, at *3 ("[T]he Eleventh Amendment immunizes states from suit brought in federal court absent waiver from the state or a clear congressional exercise of its power under the Fourteenth Amendment. The State of Maryland has not expressly waived its immunity under the Eleventh Amendment to such suits." (internal citations omitted)). Additionally, it is firmly established that a litigant may not invoke supplemental jurisdiction in order to avoid the Eleventh Amendment's bar to federal court jurisdiction over actions against states. *See Gray v. Maryland*, 228 F. Supp. 2d 628, 640 (D. Md. 2002) (citing *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89 (1984)). Accordingly, this Court is barred from hearing any of Lee's state law claims against the State of Maryland. This same reasoning

---

[11] A suit against an official in his or her official capacity is "treated as a suit against the governmental entity for which the defendant is an agent." *Miller v. Hamm*, Civ. A. No. CCB-10-243, 2011 WL 9185, at *14 (D. Md. Jan. 3, 2011). Maryland law does not recognize any distinction between individual and official capacity suits in its constitutional jurisprudence. *See id.* at *15 n.15.

applies to the claims against the Sheriff's Office and Deputy Johnson and Sheriff Hoffman in their official capacities because, as explained above, Eleventh Amendment immunity extends to state officials in their official capacity.[12] *See Gray*, 228 F. Supp. 2d at 640 (dismissing state-law claims against Maryland county sheriff in official capacity under Eleventh Amendment). Therefore, both the federal and state claims against the State of Maryland, the Sheriff's Office, and Sheriff Hoffman in his official capacity must be dismissed. The only remaining counts, therefore, are Lee's claims against Deputy Johnson and Sheriff Hofmann in their individual capacities.[13]

## III.   Immunity for Trial Testimony

Deputy Johnson argues that he has absolute immunity for his trial testimony. Indeed, under *Briscoe v. LaHue*, 460 U.S. 325, 342-43 (1983), a witness is immunized from liability for his testimony even if the testimony is perjured. This absolute immunity is recognized by Maryland law as well. *See Offen v. Brenner*, 402 Md. 191, 200 (2007).[14] Accordingly, to the extent that Lee asserts claims premised upon Deputy Johnson's trial testimony, those claims must fail. As such, in assessing Lee's remaining claims, this Court will consider Deputy

---

[12] Moreover, Lee's claims against the Sheriff's Office are barred because the Sheriff's Office is not an entity capable of being sued. *See McMahon v. County Com'rs of Kent Cnty.*, Civ. A. No. JFM-13-490, 2013 WL 2285378, at *3 (D. Md. May 21, 2013) (holding that Maryland Sheriffs' Offices are not capable of being sued).

[13] Because only the individual Defendants remain, and in light of the nature of the claims in this case, this Court will order the Clerk's Office to re-caption this matter as "Traee Daran Lee v. Deputy Vernell Johnson et al"

[14] Lee attempts to distinguish *Offen v. Brenner* by pointing out that the case involved a defamation claim. However, Lee provides no principled reason for differentiating between liability for defamation and liability for other torts, and the basic reason for granting immunity for trial testimony—i.e., to encourage truthful testimony by removing the potential for subsequent civil liability—is equally applicable in this case.

Johnson's alleged misconduct pertaining to the original traffic stop, involvement with the issuance of the warrant, and subsequent pre-trial harassment, but not his trial testimony.

## IV.   Federal Claims

This Court next turns to Lee's federal claims, at least one of which must survive in order for this Court to maintain jurisdiction over the action.  *See Gray*, 228 F. Supp. 2d at 635.

### A.  Merits of Federal Claims

#### 1)  Count I – § 1983 Claim Relating to Violation of the Fourth Amendment

Lee asserts his first claim under § 1983 for violation of his Fourth Amendment rights. Section 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

28 U.S.C. § 1983.  Section 1983 does not create "substantive rights"; instead, § 1983 provides "a method for vindicating federal rights elsewhere conferred."  *Thompson v. Dorsey*, Civ.A. No. ELH-10-1364, 2011 WL 2610704, at *3 (D. Md. June 30, 2011) (quoting *Albright v. Oliver*, 510 U.S. 266, 271 (1994)).

In his Amended Complaint, Lee identifies the Fourth Amendment as the underlying source of his § 1983 claim.  Specifically, he alleges that "the excessive force, the arrest of

Plaintiff without probable cause, and the malicious prosecution of Plaintiff . . . deprived him of his rights under the Fourth Amendment." Pl.'s Am. Compl. ¶ 62. In addition, Lee asserts that he was "search[ed] without probable cause." Pl.'s Am. Compl. ¶ 64.

Deputy Johnson's sole contention with respect to Lee's first count is that he is not a federal actor governed by the Fourth Amendment and, therefore, may not properly be sued. Of course, the constitutional right to be free from unlawful search and seizures has been incorporated under the Fourteenth Amendment and applied against the states; as such, Lee's claim is properly construed as a claim for violation of the Fourth Amendment as incorporated by the Fourteenth Amendment. *See Ker v. California*, 374 U.S. 23 (1963); *Dodson v. Merson*, Civ. A. No. AMD 03-3209, 2004 WL 1534209, at *1 (D. Md. July 8, 2004). Accordingly, Deputy Johnson is subject to suit under § 1983.

Lee's Amended Complaint also seeks to hold Sheriff Hofmann individually liable, asserting that Sheriff Hofmann is "vicariously liable for the constitutional violations" of Deputy Johnson. Sheriff Hofmann argues that Lee has failed to state a cognizable claim against him, arguing that the claim must fail because Lee has not alleged that Sheriff Hofmann directed or personally participated in the deprivation of the Lee's rights. Sheriffs' Mem. Supp. Mot. Dismiss 11, ECF No. 37-2.

Under § 1983, the doctrine of supervisory liability—rather than the doctrine of *respondeat superior*—governs the liability of law enforcement supervisors in cases where the supervisors' subordinates inflict the harm. *See Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). The Fourth Circuit has articulated three elements for establishing supervisory liability:

We have set forth three elements necessary to establish supervisory liability under § 1983: (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw*, 13 F.3d at 799.[15]

---

[15] The Fourth Circuit also provided the following explanation for each of the three elements:

To satisfy the requirements of the first element, a plaintiff must show the following: (1) the supervisor's knowledge of (2) conduct engaged in by a subordinate (3) where the conduct poses a pervasive and unreasonable risk of constitutional injury to the plaintiff. *Slakan,* 737 F.2d at 373. Establishing a "pervasive" and "unreasonable" risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury. *Id.* at 373–74.[12]

A plaintiff may establish deliberate indifference by demonstrating a supervisor's "continued inaction in the face of documented widespread abuses." *Id.* at 373. *See Miltier,* 896 F.2d at 848; *Withers,* 615 F.2d at 158; *Vinnedge v. Gibbs,* 550 F.2d 926, 928 (4th Cir.1977). The plaintiff assumes a heavy burden of proof in establishing deliberate indifference because:

[o]rdinarily, [the plaintiff] cannot satisfy his burden of proof by pointing to a single incident or isolated incidents, for a supervisor cannot be expected to promulgate rules and procedures covering every conceivable occurrence within the area of his responsibilities. Nor can he reasonably be expected to guard against the deliberate criminal acts of his properly trained employees when he has no basis upon which to anticipate the misconduct. A supervisor's continued inaction in the face of documented widespread abuses, however, provides an independent basis for finding he either was deliberately indifferent or acquiesced in the constitutionally offensive conduct of his subordinates.

*Slakan,* 737 F.2d at 372–73 (quoting *Orpiano,* 632 F.2d at 1101 (citations omitted)). *See Lopez v. Robinson,* 914 F.2d 486 (4th Cir.1990).

Causation is established when the plaintiff demonstrates an "affirmative causal link" between the supervisor's inaction and the harm suffered by the plaintiff. *Slakan,* 737 F.2d at 376; *see Rizzo v. Goode,* 423 U.S. 362, 96 S. Ct. 598, 46 L.Ed.2d 561 (1976). This concept encompasses cause in fact and proximate cause. In *Slakan,* we noted that the "proof of causation may be direct ... where the policy commands the injury of which

In order to satisfy the first element of supervisory liability, a plaintiff must allege "pervasive" unconstitutional conduct—i.e., the conduct must be "widespread" or occurring on multiple occasions. *See Miller v. Hamm*, Civ. A. No. CCB-10-243, 2011 WL 9185, at *12 (D. Md. Jan. 3., 2011); *see also Randall v. Prince George's Cnty., Md.*, 302 F.3d 188, 204 (4th Cir. 2002) ("Under the first prong of *Shaw*, the conduct engaged in by the supervisor's subordinates must be pervasive, meaning that the conduct is widespread, or at least has been used on several different occasions."). The necessary frequency of the conduct—the precise number of occasions—has not been definitively stated,[16] but a number of judges from this Court have addressed cases involving supervisory liability on motions to dismiss. *See, e.g., Miller*, 2011 WL 9185 (dismissing supervisory liability claim because allegation that supervisor had "reason to believe" the subordinate was violating the constitutional rights of

---

the plaintiff complains ... [or] may be supplied by [the] tort principle that holds a person liable for the natural consequences of his actions." *Slakan,* 737 F.2d at 376 (quoting *Wellington,* 717 F.2d at 936).

*Shaw*, 13 F.3d at 799.

[16] In *Slakan v. Porter*, the Fourth Circuit discussed a plaintiff's burden of proof:

> The plaintiff, of course, assumes a heavy burden of proof in supervisory liability cases. He not only must demonstrate that the prisoners face a pervasive and unreasonable risk of harm from some specified source, but he must show that the supervisor's corrective inaction amounts to deliberate indifference or "tacit authorization of the offensive [practices]". *Orpiano,* 632 F.2d at 1101 (quoting *Withers v. Levine,* 615 F.2d 158, 161) (4th Cir.1981). Ordinarily, he cannot satisfy his burden of proof by pointing to a single incident or isolated incidents, *Orpiano,* 632 F.2d at 1101, for a supervisor cannot be expected to promulgate rules and procedures covering every conceivable occurrence within the area of his responsibilities. Nor can he reasonably be expected to guard against the deliberate criminal acts of his properly trained employees when he has no basis upon which to anticipate the misconduct. A supervisor's continued inaction in the face of documented widespread abuses, however, provides an independent basis for finding he either was deliberately indifferent or acquiesced in the constitutionally offensive conduct of his subordinates. *Id. See also Wellington,* 717 F.2d at 936.

*Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984). Of course, *Slakan* involved a very different procedural posture—appellate review after a jury trial.

individuals and exercising final decision-making power were "too broad and vague" and failed to establish that other instances were sufficiently similar to plaintiff's case); *Thompson v. Dorsey*, 2011 WL 2610704, at *3-5 (Hollander, J.) (dismissing supervisory liability claim where plaintiff alleged only "conclusory language" regarding a history of unconstitutional occurrences and defendant's knowledge of problems within his agency); *Bishop v. Lewis*, Civ. A. No. WMN-10-3640, 2011 WL 1704755 (D. Md. May 4, 2011) (Nickerson, J.) (rejecting possibility of supervisory liability claim where plaintiff generally alleged a policy or custom of tolerating the harassment, stalking, and illegal arrests of African-Americans but failed to identify the supervisor's role in forming or supporting the pattern or practice).

Sheriff Hofmann argues that the allegations contained in Lee's Amended Complaint are conclusory and fail to allege adequate facts to support any of the three elements of supervisory liability. *See* Sheriffs' Mem. Supp. Mot. Dismiss 12-13, ECF No. 37-2. In opposition, Lee argues that his Amended Complaint contains sufficient examples of past occurrences to state a valid claim and avoid dismissal at this early stage of the litigation. *See* Pl.'s Opp. Sheriffs 9-12, ECF No. 39. In particular, Lee points to the following allegations in the Amended Complaint:

> Defendants State of Maryland, the Office of the Sheriff, and Sheriff Hofmann have instituted and maintained formal and informal customs, policies, and practices that foster, promote and encourage deputies to engage in misconduct and to deprive individuals of their constitutional rights. Without any limitation whatsoever, among the facts supporting a pattern and practice of the type of unlawful behavior here are the following statements and examples:
>
> a. On May 12, 2011, Queen Anne's County deputy John Dennis Hofmann pled guilty to second-degree assault after groping a woman inside his patrol car in August

18

2009. Deputy Hofmann is the brother of the Queen Anne's County Sheriff, Gary Hofmann. Hofmann remains employed by the Queen Anne's Office of the Sheriff

b. In August 2007, the Queen Anne's County Office of the Sheriff suspended three deputies for misconduct that occurred during a traffic stop. The misconduct concerned violations of departmental policies and procedures having to do with vehicle searches. After the investigation, all three deputies were reinstated even though two deputies had been found to have violated policies and procedures.

c. On March 17, 2004, Queen Anne's County Deputy Sheriff Mark Barbre shot and paralyzed Andrew Pope, III during a traffic stop. Deputy Barbre had signaled for Pope to stop and pull over, but Pope continued to drive his vehicle until he reached his house, where he exited his vehicle and raised his hands in surrender. Deputy Barbre shot his firearm at Pope, striking him in the neck, paralyzing him.

Pl.'s Am. Compl. ¶ 88.[17] Lee asserts that these allegations are sufficient to support his claim that Sheriff Hofmann had constructive knowledge of his deputies' unconstitutional conduct.

Although the allegations in Lee's Amended Complaint present a close case, those allegations are sufficient to plead a plausible claim under the circumstances. Lee's conclusory allegations pertaining to Sheriff Hofmann alleged "formal and informal customs, policies, and practices that foster, promote and encourage deputies to engage in misconduct and to deprive individuals of their constitutional rights" are clearly inadequate on their own, but the other allegations of specific instances of misconduct adequately supplement that

---

[17] This Court notes that these allegations are contained in neither Lee's "Facts Common to All Counts" or the section of the Amendment Complaint addressing Count One; instead, these allegations are contained in Count Three, which asserts a *Monell* claim.

claim and demonstrate the requisite constructive knowledge and deliberate indifference. The 2007 event pertaining to the traffic stop clearly raises potential Fourth Amendment issues, just as this case.[18] The 2009 and 2007 incidents, as alleged, also suggest that the Sheriff's Office—and Sheriff Hofmann in particular—have failed to properly supervise and discipline the deputies because the deputies allegedly remained a part of the Sheriff's Office despite their misconduct.[19] Above and beyond these incidents, Lee's claims involve repeated instances of harassment spanning a two month period. Accordingly, Lee has adequately pled supervisory liability as to Sheriff Hofmann.[20]

---

[18] Two of the three specific incidents (the 2009 sexual assault and 2004 shooting incidents) involve alarming misconduct by Queen Anne's County sheriff deputies and, although potentially raising other constitutional issues, also involve sheriff deputies' behavior during traffic stops.

[19] The fact that Lee's allegations do not relate to Deputy Johnson does not give this Court pause at this stage in the litigation. This Court recognizes that this conclusion may be in some tension with *McDonnell v. Hewitt-Angleberger*, Civ. A. No. WMN-11-3284, 2012 WL 1378636 (D. Md. April 19, 2012), where Judge Nickerson found that there was no supervisory liability because the allegations referred only generally to the failure to train other sheriffs deputies and did not relate to the training of the particular deputy at issue. *Id.* at *6 ("Though Plaintiff may point to general allegations that Sheriff Jenkins failed to adequately train, monitor and discipline Deputy Sheriffs with respect to police brutality, these allegations fail to provide any specifics with regard to Hewitt–Angleberger, the subordinate for whose misconduct Plaintiff seeks to hold Sheriff Jenkins accountable. There are no facts pled that suggest Sheriff Jenkins knew Hewitt-Angleberger was a threat, nor allegations of past incidents involving Hewitt–Angleberger that could have provided Sheriff Jenkins with constructive notice of this fact."). However, after further review, this Court notes that, while *McDonnell* highlighted this fact, the Fourth Circuit has never held that the "widespread" or "pervasive" wrongdoing must originate from the same source. The *Randall* court seemed comfortable accepting evidence of an agency-wide custom if it was sufficiently specific. *See* 202 F.3d at 206-07 (noting that plaintiffs should have "show[n] that it was customary to detain witnesses [without probable cause] even if they expressed a desire to leave" in order to adequately prove a claim of supervisory liability). In *Slakan*, the Fourth Circuit made no mention regarding whether the previous incidents of misconduct had been conducted by the same officers; the court found simply that the evidence showed that the defendants were aware of the unconstitutional practices. *See* 747 F.2d at 373-75. Accordingly, this Court sees no reason to insist upon specific instances of past misconduct involving only Deputy Johnson.

[20] Although this Court has already found that the federal claims against the State and the Sheriff's Office are barred by the Eleventh Amendment, it bears mentioning that a § 1983 claim against those entities would also be futile because neither is a "person" under § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989);

## 2) Count II – § 1983 Claim Relating to the Violation of Lee's Fourteenth Amendment Due Process Rights

Lee's second claim asserts a § 1983 claim for the violation of his due process rights – specifically, for "arresting him without probable cause, maliciously prosecuting him, harassing him, and falsely imprisoning him."[21] Pl.'s Compl. ¶ 76. Deputy Johnson asserts that Lee has failed to state a cognizable § 1983 claim for deprivation of due process because the issuance of a warrant broke the causal chain between Deputy Johnson's alleged initial actions and Lee's subsequent arrest. *See* Johnson Reply 8, ECF No. 38. Elsewhere in his papers, Deputy Johnson argues that Lee has failed to state a claim based upon Deputy Johnson's trial testimony because of trial witness's immunity for trial testimony. *See* Johnson Mem. Supp. Mot. Dismiss 21, ECF No. 32.

Although it appears that some of Lee's stated grounds in his Fourteenth Amendment claim are not cognizable at law,[22] this Court is not prepared to dismiss the claim at this stage in the proceeding. Lee premises his claim, at least in part, on Deputy Johnson's alleged

---

*Munyiri v. Haduch*, 585 F. Supp. 2d 670, 676 (D. Md. 2008). The same reasoning applies to Lee's official capacity claims, as those claims are really against the officer's agency. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). Accordingly, Lee's § 1983 claims as to those defendants will be dismissed with prejudice.

[21] In light of this list, this Court does *not* interpret Count II to encompass a substantive due process claim for the vaguely-mentioned interrogation referenced in Count XXII (Fifth Amendment claim).

[22] For example, in *Albright v. Oliver*, 510 U.S. 266 (1994), the United States Supreme Court held that a litigant may not premise a § 1983 on an alleged malicious prosecution in violation of the litigant's substantive due process rights. *See also Cramer v. Crutchfield*, 648 F.2d 943, 945 (4th Cir. 1981) ("A valid cause of action under [section] 1983 is not alleged simply by the assertion that a common law tort was committed by a state official. Rather, to have a meritorious claim, a plaintiff must allege that he was deprived of some constitutional right."); *McPhearson v. Anderson*, 873 F. Supp. 2d 753, 757 (E.D. Va. 2012) ("Actions under 42 U.S.C. 1983 based upon claims of false arrest or false imprisonment are properly analyzed as unreasonable seizures under the Fourth Amendment."). Similarly, as noted above, the Supreme Court has held that trial witnesses are immune from perjured trial testimony. *See Briscoe v. LaHue*, 460 U.S. 325 (1983).

harassment before his state trial. Deputy Johnson has not addressed the issue whether the right to be free from harassment is cognizable under § 1983 as a violation of a litigant's due process rights (whether procedural or substantive). This Court will reserve this legal determination until a later time. *See Woods v. Bennett*, Civ. A. No. 2:12-03592, 2013 WL 4779018, at *6 (S.D.W.V. Sept. 5, 2013) (reserving judgment on the questions whether there is a right to be free from harassment or whether the right is clearly refined in resolving a motion seeking leave to amend).

Regardless of the viability of a harassment-based liability claim, Lee has alleged a violation of a clearly established due process right. The Fourth Circuit has recognized that there is a Fourteenth Amendment right to be free from the deprivation "of liberty as a result of the fabrication of evidence by a government officer acting in an investigating capacity." *Washington v. Wilmore*, 407 F.3d 274, 282 (4th Cir. 2005). Here, Lee has alleged that the facts were contrary to what Deputy Johnson "testified to in his police report," Pl.'s Am. Compl. ¶ 29, and that Deputy Johnson later repeated this false testimony at trial. *Id.* ¶ 23. Accordingly, there is no basis to dismiss Count II at this stage.

### 3) Count III – § 1983 *Monell* Claim

Under *Monell v. Dep't of Soc. Serv. of City of New York*, 436 U.S. 658 (1978), a § 1983 cause of action may lie against a local government or municipality when execution of the government's unconstitutional policy or custom causes a plaintiff injury. *See also Walker v. Prince George's Co., Md.*, 575 F.3d 426, 431 (4th Cir. 2009) (stating that the liability of the municipality only arises where the employees' unconstitutional actions are taken in furtherance of a municipal policy or custom). In order to support a claim, however, "(1) the

municipality must have actual or constructive knowledge of the custom and usage by its responsible policymakers, and (2) there must be a failure by those policymakers, as a matter of specific intent or deliberate indifference, to correct or terminate the improper custom and usage." *Randall*, 302 F.3d at 210 (internal quotation marks omitted).

Here, Lee's allegations fail to state a viable *Monell* claim. The State and the Sheriff's Office are not municipalities and have already been dismissed from this action due to their Eleventh Amendment immunity. With respect to the individual defendants, Lee cannot state a valid *Monell* claim against an official in his individual capacity. *See Whitley v. Prince George's Cnty., Md.*, No. PWG-12-3428, 2013 WL 3659949, at *8 n.7 (D. Md. July 11, 2013). More importantly, however, Lee has not alleged that Deputy Johnson was a "responsible policymaker." As such, Lee's *Monell* claims will be dismissed as to all Defendants.

### 4) Count IV – § 1985 Conspiracy

Section 1985(3) creates a private cause of action where "two or more persons . . . conspire . . . for the purposes of depriving, either directly or indirectly, any person . . . of the equal protection of the law, or of equal privileges and immunities under the law." In order to establish a claim under § 1985(3), the plaintiff must prove that:

> (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy.

*A Society Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011) (citing *Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995)). Furthermore, a plaintiff must demonstrate "an agreement or a meeting of the minds by [the] defendants to violate the [plaintiff's]

constitutional rights." *Id.* (quoting *Simmons*, 47 F.3d at 1377); *see also, Simmons*, 47 F.3d at 1377 (noting that this is a "relatively stringent" standard).

Here, despite Lee's assertions in his various briefs, there is no allegation in the Amended Complaint that Lee is a member of a protected class. Moreover, conspiracy claims must fail if they are pled in a conclusory manner and devoid of "concrete, supporting facts." *See A Society Without a Name*, 655 F.3d at 346-47 (affirming dismissal of § 1985 claim accompanied by only conclusory allegations); *see also Gooden v. Howard Cnty.*, 954 F.2d 960, 970 (4th Cir. 1992) (en banc) ("To avoid of the purposes of qualified immunity, courts have thus required that plaintiffs alleging unlawful intent in conspiracy claims under § 1985(3) or § 1983 plead specific facts in a nonconclusory fashion to survive a motion to dismiss."). Lee's bald allegation of a "discriminatory animus" on the part of the "Defendants, or their agents or employees," as well as his failure to allege any specific facts supporting the existence of an agreement or meeting of the minds, fall far short of an adequately pled claim for conspiracy under § 1985.[23]

### 5) Count V – § 1986

Under 42 U.S.C. § 1986 Plaintiff may bring a case of action for damages against any person who, having knowledge of and the ability to prevent the alleged § 1985 conspiracy, neglected to do so. *Brisset v. Paul*, 141 F.3d 1157, at *3 (4th Cir. 1998) (unpublished); *Burnett v. Grattan*, 468 U.S. 42, 44 n.5 (1984). Due to the interrelation between § 1986 and § 1985 claims, if a "§ 1985 claim is meritless, the § 1986 claim fails as well." *Brisset*, 141 F.3d 1157, at

---

[23] This Court notes that the allegations contained in Count Thirteen for civil conspiracy add no further details regarding the existence of a conspiracy.

*3. Because this Court finds that Lee has failed to state a § 1985 claim for conspiracy, his § 1986 claim must fail as well.

### 6) Count XXII – § 1983 Claim for Violation of the Fifth Amendment

The Fifth Amendment to the United States Constitution affords individuals with specific rights with respect to custodial interrogation. Specifically, the now-familiar *Miranda* warnings must be given to an individual interrogated while in custody. *See U.S. v. Byers,* No. Crim. RDB 08-56, 2008 WL 4906152, at *1 (D. Md. Nov. 13, 2008), *aff'd* 649 F.3d 197 (4th Cir. 2011). In addition, even statements obtained after an individual is read his or her rights must be voluntary—i.e., given without "threats or violence" or "obtained by . . . direct or implied promises." *United States v. Braxton*, 112 F.3d 777, 780 (4th Cir.1997). As recognized in *Burrell v. Virginia*, 395 F.3d 508, 513-15 (4th Cir. 2005), however, there is no constitutional violation to support a § 1983 claim where the statement obtained by the allegedly coercive interrogation is not used against the individual in a criminal trial. *See id.* (discussing *Chavez v. Martinez*, 538 U.S. 760 (2003)).

Here, Lee merely alleges that his Fifth Amendment rights were violated "when he was subjected to interrogation, while in custody, before and after he received his *Miranda* rights." Pl.'s Am. Compl. ¶ 247. Lee's Amended Complaint provides no information regarding the substance of Lee's proposed statement, the use or non-use of the statement at Lee's state trial, or any other factual details regarding the circumstances of the statement. As

such, Lee has failed to allege sufficient facts to state a plausible claim, and the claim will be dismissed without prejudice.[24]

## B. Qualified Immunity

Qualified Immunity "is an affirmative defense that shields government officials performing discretionary functions from personal-capacity liability for civil damages under § 1983, insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Occupy Columbia v. Haley*, 738 F.3d 107, 118 (4th Cir. 2013) (internal quotation marks omitted); *see also Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).[25] The doctrine is intended to apply to "gray areas, where the law is unsettled or murky," rather than situations where the government actors were "plainly incompetent or . . . knowingly violate[d] the law." *Occupy Columbia*, 738 F.3d at 118. Thus, qualified immunity shields government officials from § 1983 claims unless "(1) the allegations underlying the claim, if true, substantiate a violation of federal statutory or constitutional right; and (2) this violation was of a clearly established right of which a reasonable person would have known." *Id.*

---

[24] This Court notes that it is an open question whether an individual who provides an involuntary incriminating statement may permissibly state a § 1983 claim as a violation of substantive due process. *See Burrell*, 395 F.3d at 513 n.3. However, this Court does not construe Count XXII as a substantive due process claim because of the header to Count XXII ("Violation of the Fifth Amendment to the United States Constitution, 42 U.S.C. § 1983") and because Lee failed to mention the alleged interrogation in his Fourteenth Amendment claim (Count Two).

[25] Generally, motions to dismiss pursuant to Rule 12(b)(6) address the legal sufficiency of a complaint rather than the existence of meritorious affirmative defenses; however, when the existence of such a meritorious defense—such as qualified immunity— is apparent on the face of the complaint, dismissal is appropriate. *Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013). Thus, this Court will address the issue of qualified immunity by examining the allegations contained in the Amended Complaint.

Only Sheriff Hofmann raises the issue of qualified immunity in his Motion to Dismiss (although Lee nevertheless briefed the issue in his Opposition to Deputy Johnson's Motion to Dismiss). Sheriff Hofmann claims he is entitled to qualified immunity because Lee has not alleged that Sheriff Hofmann directed or personally participated in the deprivation of the Plaintiff's rights and, as such, Lee has failed to allege a constitutional violation. Sheriff's Mem. Supp. Mot. Dismiss 11, ECF No. 37-2.

However, as discussed above, Sheriff Hofmann's liability arises, if at all, due to his alleged failure to prevent Deputy Johnson's actions under a theory of supervisory liability. Accordingly, Lee must make the following allegations in order to prevent Sheriff Hofmann from successfully invoking the doctrine of qualified immunity: (1) it was clearly established at the time of Deputy Johnson's alleged activities that Sheriff Hofmann could be held liable; (2) it was clearly established at the time Sheriff Hofmann was supervising Deputy Johnson that Deputy Johnson's actions were unconstitutional; and (3) a reasonable person in Sheriff Hofmann's position would have known that his actions were unlawful. *See Shaw v. Stroud*, 13 F.3d 791, 801 (4th Cir. 1994).

In the Fourth Circuit, the law of supervisory liability has been firmly established for quite some time. *See id.* at 801-02. Therefore, Sheriff Hofmann's qualified immunity depends upon the more factual questions surrounding Lee's Fourth and Fourteenth Amendment claims and the reasonableness of Sheriff Hofmann's actions. At this early stage in this litigation, this Court is unable to make any final ruling on the availability of qualified immunity.

## V.    Underline{State Claims}

Because some of Lee's federal claims survive, this Court may next consider Lee's claims based upon Maryland state law.  *See* 28 U.S.C. § 1367.

### A. State Personnel Immunity and Compliance with the Maryland Tort Claims Act

Deputy Johnson argues that Lee's claims against him in his individual capacity are barred for two reasons.  First, he argues that Lee failed to comply with the notice requirements of the Maryland Tort Claims Act.  Second, Deputy Johnson asserts that he qualifies for Maryland statutory personnel immunity under the Maryland Tort Claims Act, Md. Code, Cts. & Jud. Proc. § 5-522.

With respect to Deputy Johnson's notice argument, this Court first observes that the notice provisions of the Maryland Tort Claims Act do not apply to complaints that sufficiently allege malice or gross negligence on the part of the state employee.  *See Pavlovic v. University of Maryland Baltimore Cnty.*, Civ. A. No. MJG-13-983, 2013 WL 4775530, at *5 (D. Md. Sept. 4, 2013); *McDaniel v. Maryland*, Civ. A. No. RDB-10-189, 2010 WL 3260007, at *8 n.5 (D. Md. Aug. 18, 2010); *Barbre v. Pope*, 402 Md. 157, 181-82 (Md. 2007).  Under Maryland law, malice means "without legal justification or excuse, but with an evil or rancorous motive influenced by hate, the purpose being to deliberately and willfully injure the plaintiff." *McDaniel*, 2010 WL 3260007, at *8 (quoting *Shoemaker v. Smith*, 353 Md. 143, 163 (Md. 1999)).  Both this Court and Maryland state courts recognize that "[p]laintiffs face a high standard when pleading malice."  *See id.* (citing *Elliott v. Kupferman*, 58 Md. App. 510, 528 (1984)); *see also McMahon v. County Com'rs of Kent Cnty.*, Civ. A. No. JFM-13-490, 2013 WL 2285378, at *6 (D. Md. May 21, 2013) (stating that, under Maryland law, actual malice need

not be pleaded with specificity, but that a complaint must at least contain sufficient facts to support an inference of malice). Under Maryland law, gross negligence is "an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them." *Newell v. Runnels*, 407 Md. 578, 638, 967 A.2d 729 (Md. 2009).

Here, Lee has alleged that Deputy Johnson acted with malice, *see* Pl.'s Am. Compl. ¶ 39, and has pled sufficient facts to support this allegation. Specifically, Lee has alleged that the car in which he was riding was illegally stopped and that he was arrested and subsequently convicted due to Deputy Johnson's false statements in the police report. Finally, Lee has alleged that Deputy Johnson regularly followed him, verbally berated him, and otherwise harassed him. These allegations suffice to adequately plead malice. *Cf. McDaniel*, 2010 WL 3260007, at *9. Accordingly, Lee was not required to provide notice to the Maryland Treasurer as a condition precedent to filling suit.

Moreover, the Maryland Tort Claims Act provides immunity to state personnel only to the extent that the state official was performing a discretionary act within the scope of his or her public duties and acted without malice or gross negligence. *See* Md. Code, Cts. & Jud. Pro. § 5-522(b); *McDaniel*, 2010 WL 3260007, at *8. In light of this Court's ruling that Lee has adequately alleged malice, the statutory state personnel immunity does not provide Deputy Johnson with a plausible justification for dismissal at this stage.

With respect to Sheriff Hofmann, Lee's Amended Complaint has failed to plead actual malice. Although Lee alleges that the "Defendants"—including Sheriff Hofmann—

acted with "malice," his allegations are conclusory and unsubstantiated as to Hoffmann. *See, e.g.*, Pl.'s Am. Compl. ¶ 101 ("Upon information and belief, Sheriff Hofmann had knowledge that his deputy sheriffs requested a warrant under false pretenses, that they physical assaulted Mr. Lee, that they conducted a false arrest, that they falsely imprisoned Mr. Lee for more than twenty-weight days, that they permitted the application of false charges, and finally, that they attempted to cover up the entire affair."). There are no facts to suggest that Sheriff Hofmann acted—or failed to act—out of an "evil or rancorous motive," and as such, Lee has failed to provide any facts giving the necessary clarity or precision to his claims of malice by Sheriff Hofmann.

Whether Lee has adequately pled gross negligence is a closer question. In fact, Lee declined to brief the issue, instead relying upon his conclusory allegations of malice. *See* Pl.'s Opp. Sheriffs 14-16, ECF No. 39 (addressing common law public official immunity rather than state personnel immunity);[26] *see also* Pl.'s Opp. Johnson 29, ECF No. 35 (noting that, because "Defendants, including Deputy Johnson," acted in a way that was "plainly malicious, there is no need to discuss gross negligence in depth."). Nevertheless, this Court finds that (at least at this stage) the facts alleged in Lee's Amended Complaint concerning past misconduct by other sheriff deputies, which this Court found sufficient to allege supervisory liability under federal law, are also sufficient for purposes of demonstrating gross negligence under Maryland law. *Cf. Mitchell v. Rappahannock Reg'l Jail Auth.*, 703 F. Supp. 2d 549, 562 (E.D. Va. 2010) ("As gross negligence is negligence which shocks fair-minded

---

[26] It is well-settled that Maryland statutory state personnel immunity under the Maryland Tort Claims Act is different from public official immunity, which is not available for constitutional torts. *See Lee v. Cline*, 384 Md. 245, 258 (Md. 2004).

people, but is less than willful recklessness [under Virginia law], a plausible claim for supervisory liability would also plausibly plead gross negligence." (internal quotation marks omitted)).[27] Therefore, Lee's Amended Complaint is adequate to defeat Sheriff Hofmann's attempt to invoke state personnel immunity at this point in the proceeding.

### B. State Claims Against Sheriff Hofmann

With respect to those claims related to the allegedly illegal traffic stop, arrest, and subsequent harassment, Lee has failed to state any viable state-law claim against Sheriff Hofmann. None of these counts alleges specific facts with respect to Sheriff Hofmann (rather than Deputy Johnson); instead, Lee simply refers to "Defendants" in each of his claims. This Court has previously refused to accept such attempts to impose liability by simply grouping defendants together. *See Crouch v. City of Hyattsville, Md.*, Civ. A. No. DKC 09-2544, 2010 WL 4868100, at *6 (D. Md. Nov. 23, 2010).

Moreover, although Lee has not addressed the issue of vicarious liability with respect to Sheriff Hofmann in his briefs, it is clear that there is no basis for the application of that doctrine to Lee's state claims. Generally, a supervising employee is not vicariously liable for the tortious conduct of a co-employee unless he participated in or directed the conduct. *See Baltimore Police Dep't v. Cherkes*, 140 Md. App. 282, 333 (Md. Ct. Spec. App. 2001). Because Lee's Amended Complaint contains only conclusory facts with respect to Sheriff Hofmann,

---

[27] Nevertheless, the parties are free to argue whether "deliberate indifference" under federal law substantially differs from "gross negligence" under Maryland law in their subsequent papers. As a preliminary matter, this Court notes that the Fourth Circuit's supervisory liability test refers to "constitutional injury," while the state gross negligence standard refers to injury "affecting the life or property of another."

Lee has failed to plausibly allege the vicarious liability of Sheriff Hofmann under Maryland law.[28]

The only claims of direct liability with respect to Sheriff Hofmann are Counts XV, XVI, XVII, and XXI (negligent hiring, negligent training and supervision, negligent retention, and negligent entrustment). While Lee's factual allegations as to other incidents involving sheriffs deputies speaks to the supervision and training claim, there are no plausible, non-conclusory allegations as to the other three claims. As such, only Lee's negligent training and supervision claim (Count XVI) may proceed.

### C. State Claims Against Deputy Johnson

#### 1) Count VI: Violation of Articles 24 and 26 of the Maryland Constitution's Declaration of Rights

Lee's Count IV alleges violations of Articles 24 and 26 of the Maryland Constitution's Declaration of Rights. These provisions are the state analog to the federal Fourth and Fourteenth Amendments, and they are analyzed *in pari materia*.[29] *See McDaniel*, 2010 WL 3260007, at *10. As this Court has already found that Lee has stated claims for Fourth and

---

[28] This Court notes the subtle difference between supervisory liability under § 1983 and vicarious liability under Maryland law. Supervisory liability may be premised upon "deliberate indifference" to or "tacit acceptance" of the wrongdoing of one's subordinates, while vicarious liability requires some active involvement with (i.e., directing) the wrongdoing.

[29] Maryland law, however, does not provide the defense of qualified immunity for law enforcement agents. *McDaniel*, 2010 WL 3260007, at *10; *see also DiPino v. Davis*, 354 Md. 18, 51 (1991). In addition, violations of Maryland constitutional rights may be pursued in common law actions for damages, while § 1983 provides the mechanism for civil enforcement of federal constitutional violations. *See DiPino*, 354 Md. at 50.

Fourteenth Amendment violations, Lee has adequately stated claims for violations of Articles 24 and 26 of the Maryland Declaration of Rights.[30]

### 2) Count XI: Abuse of Process

The elements of an abuse of process claim are (1) the willful and wrongful use of process after it issues in a manner not contemplated by law (2) in order to satisfy an ulterior motive (3) that results in damages. *Campbell v. Lake Hallowell Homeowners Ass'n*, 157 Md. App. 504, 530 (2004). As is evident from the elements of the tort, some misuse or perversion of the legal machinery is required. An attempt to use criminal proceedings to achieve some "collateral objective"—most commonly, to extort money—is encompassed by the tort; however, mere use of criminal proceedings with "vicious or vindictive motive" is not. *See id.* at 531. Here, Lee's allegations raise questions about the good-faith initiation of criminal proceedings; however, Lee has made no allegation that process was subsequently misused. Moreover, his Amended Complaint does not identify any specific, legally cognizable collateral objective. *See Berman v. Karvounis*, 308 Md. 259, 265-66 (1987) (rejecting claim of abuse of process based upon alleged motive of harassment where judicial proceedings evolved in normal fashion and no evidence of coercion or extortion). As such, the abuse of process claim must be dismissed.

### 3) Count XII: Invasion of Privacy

Lee's invasion of privacy claim asserts that Deputy Johnson intruded upon Lee's seclusion.[31] *See* Pl.'s Am. Compl. ¶ 175; Pl.'s Johnson Resp. 37, ECF No. 35. A defendant

---

[30] Deputy Johnson correctly points out that several of the alleged wrongs mentioned in Counts VI and VII are not adequately pled. Specifically, Lee has not made any factual allegations with regard to deprivation of property without due process or freedom from the use of excessive force. However, Lee has alleged violations that are adequately pled, and dismissal of the claims in their entirety would be inappropriate.

may be liable for intrusion upon seclusion when he intentionally intrudes into a private place or the affairs of another and such intrusion would be highly offensive to a reasonable person. *See Furman v. Sheppard*, 130 Md. App. 67, 73-74 (Md. Ct. Spec. App. 2000). Thus, in order to state a claim, the plaintiff must allege some intrusion into a private place or matter. Maryland courts have recognized that an individual's privacy is at "its zenith in the home," but matters exposed to or occurring in the public eye are not private. *See id.*

Here, Lee has not alleged any intrusion into a private place or matter. Lee simply argues that "Deputy Johnson intentionally intruded upon Mr. Lee's privacy and seclusion by falsely accusing him of crimes that he did not commit, arresting him, and then actively participating in Mr. Lee's malicious prosecution and false imprisonment" and also by "torment[ing] Mr. Lee and his family" in the months before the criminal trial. *See* Pl.'s Johnson Resp. 37-38, ECF No. 35; *see also* Pl.'s Am. Compl. ¶ 174. However, none of these allegations relate to any private place or matter; instead, they relate to events that occurred in public streets and commercial establishments. *See, e.g.,* Pl.'s Am. Compl. ¶¶ 15, 21, 22. Accordingly, Lee's claim for invasion of privacy distress must be dismissed.

### 4) Count XIII: Civil Conspiracy

Lee's thirteenth claim is for "civil conspiracy." However, under Maryland law,[32] there is no separate tort for civil conspiracy; instead, a civil conspiracy theory merely extends

---

[31] The unreasonable intrusion upon the seclusion of another is just one of four versions of an invasion of privacy tort. The other three forms are (1) the unreasonable publicity given to another's private life, (2) the unreasonable publicity placing another in false light; and (3) the appropriation of one's name or likeness. *Barnhart v. Paisano Publications, LLC*, 457 F. Supp. 2d 590, 593 (D. Md. 2006).

[32] Although Lee does not specify whether he intended to bring his "civil conspiracy" claim under state or federal law, this Court finds it quite clear that Lee intended this to be a state-law claim. An independent federal cause of action for civil conspiracy does exist, but it arises under § 1983. *See McDaniel*, 2010 WL

liability to the co-conspirators once some other tortious conduct is established.  *See McDaniel*, 2010 WL 3260007, at *11.  Accordingly, Lee's claim cannot state a valid cause of action and will be dismissed.[33]

### 5) Count XIV: Intentional Infliction of Emotional Distress

Under Maryland law, a plaintiff must allege the following elements to state a claim for intentional infliction of emotional distress: "(1) the conduct must be intentional or reckless; (2) the conduct must be extreme and outrageous; (3) there must be a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress must be severe." *Carter v. Aramark*, 153 Md. App. 210, 245 (2003).  In general, Maryland courts have only imposed liability sparingly and have limited the tort to situations where the "wounds are truly severe and incapable of healing themselves."  *McDaniel*, 2010 WL 3260007, at *9 (quoting *Solis v. Prince George's Cnty.*, 153 F. Supp. 2d 793, 804 (D. Md. 2001)). Accordingly, Maryland courts require the element of severe emotional distress to be pled with particularity.  *See McDaniel*, 2010 WL 32620007, at *9.

Here, Lee has failed to plead sufficient facts to plausibly allege a cognizable claim. First, Lee has failed to demonstrate that Deputy Johnson's conduct was outrageous.  His allegations with respect to the harassment are not sufficiently detailed for this Court to conclude that Deputy Johnson's alleged conduct "exceed[ed] all bounds usually tolerated by

---

[33] 3260007, at *11.  Here, however, Lee never mentioned § 1983 in connection to his civil conspiracy claim. Moreover, his brief identifies the claim as "common law civil conspiracy" and cites to Maryland case law for the elements of his claim.  *See* Pl.'s Johnson Resp. 17, ECF No. 35.  Even if Lee had intended his claim to arise under federal law, however, Lee failed to adequately plead the facts necessary for a conspiracy, as discussed above in relation to Lee's § 1985 and § 1986 claims.

[33] However, this Court's dismissal of the separately pled civil conspiracy claim does not prevent Lee from relying on a conspiracy theory to extend tort liability to co-conspirators at some later point in this action.

decent society" and were not simply mere insults.  *Kentucky Fried Chicken Nat. Mgm't Co. v. Weathersby*, 326 Md. 663, 670, 677 (1992); *cf. Kashaka v. Baltimore Cnty., Md.*, 450 F. Supp. 2d 610, 619-20 (D. Md. 2006) (repeated, allegedly baseless stops of plaintiff by various police officers did not amount to sufficiently "outrageous conduct" to state a claim for intentional infliction of emotional distress under Maryland law); *Brewton v. City of New York*, 550 F. Supp. 2d 355, 369-370 (holding that false arrest was not sufficiently outrageous to constitute intentional infliction of emotional distress under New York law and noting that plaintiff's alleged emotion harm—that she cried at the time and subsequently feared that the police would not help her—was not sufficiently serious).  Moreover, Lee has only vaguely alluded to the intensity and the duration of his distress.  Although Lee alleges that he "struggles sleeping," "avoids socializing," and sees "a psychiatrist for anxiety and depression," Pl.'s Am. Compl. ¶ 47, he has failed to explain how that emotional trauma is in any way related to Deputy Johnson's actions.

6) **Negligence-Based Claims (Count XV – Negligent Hiring, Count XVI – Negligent Training and Supervision, Count XVII – Negligent Retention, Count XXI – Entrustment, Count XX – General Negligence)**

Lee's Amended Complaint asserts several claims against the "Defendants" based upon negligence theories, including negligent hiring, training and supervision, retention, and entrustment and a general negligence claim as well.  In his Response brief, however, Lee confirmed that he only intended to assert the general negligence claim against Deputy Johnson.  *See* Pl.'s Johnson Resp. 33, ECF No. 35.

Regardless of the intended defendants, the Maryland Tort Claims Act provides state personnel with immunity for claims premised upon negligence (as mentioned above).  Lee

has adequately pled malice to survive Deputy Johnson's Motion to Dismiss, so this Court will not dismiss Lee's negligence claim at this time. However, this Court notes that the Maryland Tort Claims Act's state personnel immunity would shield Deputy Johnson from liability for simple negligence if he is subsequently unable to prove malice or gross negligence.

### 7) Count XVIII: Unlawful Custom, Pattern, or Practice of Improper Conduct

Under Maryland law, a municipality may be held liable for widespread patterns or practices that cause constitutional harms. *See McMahon*, 2013 WL 2285378, at *4 n.6 (citing *Prince George's Cnty. v. Longtin*, 419 Md. 450 (Md. 2011)). Unlike a federal *Monell* claim, however, a state pattern and practice may premise liability upon *respondeat superior*. *See id.* (citing *DiPino v. Davis*, 354 Md. 18 (Md. 1999)).

Here, Lee seems to argue that his pattern or practice claim is viable as to the individual defendants rather than (or in addition to) a municipality. Lee has provided no authority to support this contention, and this Court has been unable to identify any authority holding that such a claim would be cognizable under Maryland law. As such, the claim will be dismissed with prejudice as to both individual Defendants.

### 8) Count XIX: Gross Negligence

Lee's nineteenth count asserts a claim for gross negligence. Specifically, Lee alleges that "Deputy Johnson acted with a wanton and reckless disregard for Plaintiff's civil rights by conducting an illegal traffic stop, causing an improper warrant to issue, harassing Plaintiff and his family during a two-month period, by committing perjury during Plaintiff's criminal

trial, and by causing Plaintiff to be falsely convicted and imprisoned."  Pl.'s Am. Compl. ¶ 217.

Under Maryland law, gross negligence entails:

> an intentional failure to perform a manifest duty in reckless disregard of the consequences as *affecting the life or property of another*, and [it] also implies a thoughtless disregard of the consequences without an exertion of any effort to avoid them. Stated conversely, a wrongdoer is guilty of gross negligence or acts wantonly and willfully only when he inflicts injury intentionally or is so utterly indifferent to the rights of others that he acts as if such rights did not exist.

*Barbre v. Pope*, 402 Md. at 187, 935 A.2d at 717 (emphasis added).  Accordingly, the definition of gross negligence makes clear that some danger to person or property is necessary. Indeed, the cases in which allegations of gross negligence survive generally appear to involve operation of motor vehicles, shootings, or other conduct involving a high degree of danger to person or property.  *See id.* (discussing variety of cases involving allegations of gross negligence); *cf. Yarn v. Hamburger Law Firm, LLC*, Civ. A. No. RDB-12-3096, 2013 WL 5375462, at *9 (D. Md. Sept. 24, 2013) (discussing limits of gross negligence tort).  Because Lee's Amended Complaint alleges no conduct posing such a danger, his gross negligence claim will be dismissed.

### 9)  Count XXIII: Reckless Endangerment

Lee's twenty-third count alleges "reckless endangerment."  There is no tort for reckless endangerment under Maryland law, and Lee concedes as much in his papers.  *See* Pl.'s Opp. Johnson 38, ECF No. 35.  As such, this claim must be dismissed with prejudice as to all Defendants.

### 10) Availability of Punitive Damages

Deputy Johnson also claims immunity from punitive damages for all claims under § 5-522(a)(1) of the Courts and Judicial Procedure Article of the Maryland Code.  *See* Johnson Mem. Supp. Mot. Dismiss 21, ECF No. 32.  Lee does not expressly contest Deputy Johnson's argument, and the issue is not mentioned again anywhere in the parties' papers.  However, it is clear that § 5-522(a) expressly applies to the State rather than individual state personnel, and Deputy Johnson has provided no other authority to support his contention that punitive damages are barred by the Maryland Tort Claims Act.

## VI.  Statute of Limitations

In his Reply brief, Sheriff Hofmann raises for the first time the issue of statute of limitations.  *See, e.g.,* Sheriffs' Reply 3-4, ECF No. 42.  In light of the lack of full briefing and the questions as to the applicable dates of certain alleged interactions between Deputy Johnson and Lee,[34] this Court will not address the statute of limitations issue at this time.  *See Clawson v. FedEx Ground Package Sys., Inc.*, 451 F. Supp. 2d 731, 734-35 (D. Md. 2006) ("The ordinary rule in federal courts is that an argument raised for the first time in a reply brief or

---

[34] Here, Lee's initial arrest occurred on March 4, 2010 (qualified by the language "on or about," as are all of the other dates in the Amended Complaint).  Pl.'s Am. Compl. ¶ 15.  A warrant was issued on March 5, 2010, and Lee surrendered two days later (March 7).  Lee's trial occurred on June 17, 2010, and he was released from custody on July 15, 2010.  *Id.* ¶¶ 20, 27.

Lee filed his original complaint in this action on March 4, 2013.  Subsequently, he sought leave to amend on May 7, 2013, and his proposed Amended Complaint (attached to his motion for leave) named Sheriff Hofmann for the first time.  *See* Mot. Amend, ECF No. 19.  This Court granted Lee's Motion to Amend on June 27, 2013, causing Lee's proposed Amended Complaint to be filed.  Thus, Lee's attempt to file suit against Sheriff Hofmann occurred more than three years after his initial arrest; however, he was within the three year window if time is counted from his release from prison.

In light of these facts, the statute of limitations issue turns on (1) the date on which each of Lee's cause of actions accrued; and (2) the extent to which Lee's Amended Complaint relates back.  The first question requires a detailed look at the substantive law of each cause of action.  *Cf. Gray*, 228 F. Supp. 2d at 641 (examining Maryland false arrest and false imprisonment claims to determine whether plaintiff had met Maryland Tort Claims Act requirement of filing a law suit within three years).  The second question is governed by Rule 15 of the Federal Rules of Civil Procedure.  *See also Angles v. Dollar Tree Stores*, 494 F. App'x 326, 328-29 (4th Cir. 2012) (unpublished) (discussing statute of limitations questions related to motions for leave to amend).

memorandum will not be considered. . . . [T]he power to decline consideration of such arguments is discretionary, and courts are not precluded from considering such issues in appropriate circumstances." (internal citations omitted)).

CONCLUSION

For the reasons stated above, Defendant State of Maryland's Motion to Dismiss (ECF No. 33) is GRANTED. Defendant Deputy Vernell Johnson's Motion to Dismiss Amended Complaint (ECF No. 31) is GRANTED IN PART and DENIED IN PART. Finally, the Motion of Defendants Queen Anne's County Office of the Sheriff and Sheriff Gary Hofmann to dismiss the amended complaint (ECF No. 37) is GRANTED IN PART and DENIED IN PART. Specifically, the following claims are DIMISSED WITH PREJUDICE:

1) The § 1983 claims against the State of Maryland, the Queen Anne's County Office of the Sheriff, and Deputy Vernell Johnson and Sheriff Gary Hofmann in their official capacities;

2) The civil conspiracy claim (Count XIII);

3) The Maryland pattern or practice claim (Count XVIII) as to the individual defendants; and

4) The reckless endangerment claim (Count XXIII).

In addition, the following claims are DISMISSED WITHOUT PREJUDICE:

1) All other claims against the State of Maryland, the Queen Anne's County Office of the Sheriff, and Deputy Johnson and Sheriff Hofmann in their official capacities;

2) The § 1983 *Monell* claim (Count III);

3) The § 1985 claim; (Count IV);

4) The § 1986 claim (Count V);

5) The abuse of process claim (Count XI);

6) The invasion of privacy claim (Count XII);

7) The intentional infliction of emotional distress claim (Count XIV);

8) The negligent hiring claim (Count XV);

9) The negligent retention claim (Count XVII);

10) The gross negligence claim (Count XIX);

11) The negligent entrustment claim (Count XXI); and

12) The Fifth Amendment § 1983 claim (Count XXII).[35]

Furthermore, Queen Anne's County, Maryland's Motion to Dismiss (ECF No. 13), the State of Maryland's Motion to Dismiss Complaint (ECF No. 15), and Deputy Vernell Johnson's Motion to Dismiss (ECF No. 23)—all of which address Plaintiff Lee's original Complaint— are DENIED AS MOOT.

A separate Order follows.

---

[35] Accordingly, only the following claims remain:
1) The Fourth Amendment § 1983 claim (Count I) against Deputy Johnson and Sheriff Hofmann in their individual capacities;
2) The Fourteenth Amendment § claim (Count II) against Deputy Johnson and Sheriff Hofmann in their individual capacities;
3) The Article 24 claim (Count VI) against Deputy Johnson and Sheriff Hofmann in their individual capacities;
4) The Article 26 claim (Count VII) against Deputy Johnson and Sheriff Hofmann in their individual capacities;
5) The false arrest claim (Count VIII) against Deputy Johnson in his individual capacity;
6) The false imprisonment claim (Count IX) against Deputy Johnson in his individual capacity;
7) The malicious prosecution claim (Count X) against Deputy Johnson in his individual capacity;
8) The negligent training and supervision claim (Count XVI) against Sheriff Hofmann; and
9) The general negligence claim (Count XX).

Dated:      February 5, 2014                       /s/

Richard D. Bennett
United States District Judge